**S & A RESTAURANT CORPORATION D/B/A Steak & Ale Restaurant, Petitioner**

v.

**Annie Marie LEAL, Respondent.**

No. 94–0844.

Supreme Court of Texas.

Feb. 16, 1995.

Marie R. Yeates, Penelope Nicholson, Stephanie K. Crain, Catherine Bulowski Smith, Houston, Lewin Plunkett, and Kerby A. Johnson, San Antonio, for petitioner.

Pat Maloney, Sr., Michael D. Maloney, Charles Nicholson, San Antonio, Christa Brown, Austin, and Sean F. O'Neill, San Antonio, for respondent.

PER CURIAM.

The question presented by this appeal is whether S & A Restaurant Corporation d/b/a Steak & Ale Restaurant (Steak & Ale) revoked its consent to a settlement agreement with Annie Marie Leal prior to the trial court's rendition of judgment. The trial court purported to render an agreed judgment on the settlement agreement. The court of appeals determined that the trial court rendered judgment before Steak & Ale's revocation of consent, but remanded the case to the trial court for a hearing on Steak & Ale's motion for new trial. 883 S.W.2d 221, 228–30. A majority of this Court reverses the judgment of the court of appeals and remands this case for a new trial.

Leal filed this personal injury suit against Steak & Ale claiming that she sustained serious head, back, and neck injuries when a waiter at a Steak & Ale Restaurant dropped a large tray of double-plated dinners on her. According to Leal's testimony at trial and the depositions of Leal's doctors, Leal was confined to a wheelchair as a result of the accident. At a hearing on May 14, 1991, the parties agreed to settle for $2 million, at which time the following exchange took place:

THE COURT: Yes. We need to go on the record.

[PLAINTIFF'S ATTORNEY]: And I would say to you, just listen to this. So that we have now asked the Court to approve a settlement in the total sum of $2 million.

Before doing that, however, and we need to know that you understand it, that you want it settled, that you approve of it, and that you understand that forever concludes your claim against Steak & Ale.

Do you understand all of that?

MS. LEAL: Yes, sir.

[PLAINTIFF'S ATTORNEY]: And do you ask the Judge and want the Judge to approve the conclusion and settlement?

MS. LEAL: Yes, sir.

THE COURT: You realize that once this Judgment is signed and I approve it, everything else, it's full, final and complete? You can't come back later and say, "Well I made a mistake," or "We should have gone for more"? Whatever? Do you understand?

MS. LEAL: Yes, I do.

THE COURT: Are the court costs going to be paid by Defendants?

[PLAINTIFF'S ATTORNEY]: Yes.

[DEFENDANT'S ATTORNEY]: Normally we pay for the court costs. Yes, we'll agree to pay the costs.

THE COURT: You realize now, and you are sufficiently aware of the facts now, and there isn't any question about your understanding the total settlement is $2 million? Do you understand that?

MS. LEAL: Yes, sir. I understand that. Mike and I—

THE COURT: And you want me to approve the settlement and sign the Judgment?

MS LEAL: Yes, sir.

[PLAINTIFF'S ATTORNEY]: And you understand that once you settle the claim you will be responsible for paying all of your medical bills?

THE COURT: And the attorneys' fees come out of that. Do you understand?

MS. LEAL: Yes, sir.

THE COURT: I'll approve the settlement.

One month after the May 14 hearing, a legal assistant employed by Steak & Ale's counsel in this case, saw Leal walking with-out apparent difficulty in a San Antonio restaurant. Steak & Ale hired private investigators who watched and videotaped Leal for five days. During that time, none of the investigators saw Leal use a cane, walker, or wheelchair. On June 18, Steak & Ale sent letters to the trial court and to Leal's counsel advising that Steak & Ale was withdrawing its consent to the settlement agreement based on its newly discovered evidence that Leal was not confined to a wheelchair. At a hearing on June 19, the trial court refused to allow Steak & Ale to present its new evidence and signed a judgment against Steak & Ale and for Leal for $2 million.

■■■ A party may revoke its consent to a settlement agreement at any time before judgment is rendered on the agreement. *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex.1983); *Samples Exterminators v. Samples*, 640 S.W.2d 873, 874–75 (Tex.1982). A judgment rendered after one of the parties revokes his consent is void. *Samples*, 640 S.W.2d at 875. Thus, the question before us is whether the trial court rendered judgment *before* or *after* Steak & Ale revoked its consent to the settlement agreement on June 18.

■■■ Leal argues that the trial court rendered judgment on May 14 at the time the settlement agreement was dictated into the record, and that the trial court rendered judgment before Steak & Ale's revocation of consent. Both parties agree that the trial court approved the settlement agreement at the May 14 hearing.[1] However, approval of a settlement does not necessarily constitute rendition of judgment. *Buffalo Bag Co. v. Joachim*, 704 S.W.2d 482, 484 (Tex.App.— Houston [14th Dist.] 1986, writ ref'd n.r.e.). Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk. *Samples*, 640 S.W.2d at 875; *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 59 (Tex.1970). As we explained in *Reese v. Piperi:*

---

1. Steak & Ale acknowledges that Leal could sue Steak & Ale for breach of the settlement agree-ment, but that Leal's claim would be subject to Steak & Ale's defense of fraudulent inducement.

The judge's intention to render judgment in the future cannot be a present rendition of judgment. The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made. The opportunities for error and confusion may be minimized if judgments will be rendered only in writing and signed by the trial judge after careful examination. Oral rendition is proper under the present rules, but orderly administration requires that form of rendition to be in and by spoken words, not in mere cognition, and to have effect only insofar as those words state the pronouncement to be a present rendition of judgment.

534 S.W.2d 329, 330 (Tex.1976). The words used by the trial court must clearly indicate the intent to render judgment at the time the words are expressed.

■ The application of these principles leads us to the conclusion that the trial court did not render judgment during the May 14 settlement hearing. The trial court distinguished between the acts of *approving the settlement* and *rendering judgment*, as evidenced by the following statements to Leal:

> You realize that once this judgment is signed and I approve it, everything else, it's full, final and complete? ... And you want me to approve the settlement and sign the judgment? ... I'll approve the settlement.

Although the trial court expressly approved the settlement, he did not clearly indicate that he intended to render judgment during the May 14 hearing. Rather, the trial court stated that the case would not be "full, final, and complete" until the *signing* of the judgment, which did not occur until June 19. The fact that the trial court believed that he had rendered judgment during the May 14 hearing is not dispositive.[2] As we stated in *Reese*, "orderly administration requires [a]

rendition [in open court] to be in and by spoken words, not in mere cognition." 534 S.W.2d at 330.

The court of appeals, however, determined that there was a rendition on May 14 because everyone at the May 14 hearing "clearly understood that the case was all over (*'full, final, and complete'*) and that thereafter [Leal] could not come back seeking further recovery." 883 S.W.2d at 228. But the words of the trial court do not evince, as they must, such a "clear" understanding. In fact, the trial court's express words were that the case was not to be "full, final and complete" until after the judgment was signed.

Therefore, a majority of this Court holds that the trial court did not render judgment during the May 14 settlement hearing, and that the trial court did not render judgment until after Steak & Ale's revocation of consent.[3] The judgment of the court of appeals is reversed and this case is remanded to the trial court for a new trial. *See* TEX.R.APP.P. 122.

---

**2.** At the motion for new trial hearing on July 25, 1992, the trial court described the events at the May 14 hearing: "I approved the settlement. I also rendered Judgment."

**3.** We note that our holding today does not affect TEX.R.CIV.P. 306a, which provides that the appellate timetable begins to run on the date that the judgment is signed.