

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00035-CV

ACT TRADING F.Z.E.                                                         APPELLANT

V.

TRIPLE CANOPY, INC.                                                         APPELLEE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. C2013135

----------

## MEMORANDUM OPINION[1]

----------

This is an accelerated interlocutory appeal from the trial court's denial of ACT Trading F.Z.E.'s special appearance. ACT brings two issues challenging the trial court's findings supporting the exercise of personal jurisdiction over it under a reverse veil-piercing theory. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Background**

The underlying suit arises from a transaction between ACT and Triple Canopy, Inc., through a third party dealer, for the manufacture and delivery of several armored vehicles. At the time of the transaction, ACT had a principal office located in Ajman, a United Arab Emirates free zone, and it manufactured the vehicles for Triple Canopy there. For a time, ACT stored the vehicles in Ajman; it then shipped them to Turkey and, later, to Iraq. ACT does business in the Middle East, particularly Iraq, Afghanistan, and North Africa. ACT's sole owner and employee is Dennis Mark, a Granbury, Texas resident. Mark is also the sole owner of other companies operating overseas (sometimes referred to as the ACT group of companies). Triple Canopy sought to invoke personal jurisdiction over ACT under a reverse veil-piercing theory, that is, Triple Canopy alleged that ACT is an alter ego of Mark and that personal jurisdiction over Mark can be imputed to ACT.[2]

**Standard of Review and Applicable Law**

Whether a trial court has personal jurisdiction over a defendant is a question of law, which we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d

---

[2]Although Triple Canopy used the term "fusion" in the trial court—with respect to Mark and the ACT group of companies—it was arguing that Mark's contacts with Texas should be imputed to ACT, which is commonly referred to as reverse veil piercing. *See, e.g.*, *Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 482 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

841, 845 (Tex. App.—Fort Worth 2006, no pet.). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *Moki Mac*, 221 S.W.3d at 574; *TravelJungle*, 212 S.W.3d at 845. Once the plaintiff does so, the burden shifts to the nonresident defendant to negate all alleged jurisdictional bases. *Moki Mac*, 221 S.W.3d at 574; *TravelJungle*, 212 S.W.3d at 845. We review all of the evidence in making this determination. *TravelJungle*, 212 S.W.3d at 845. We may review the trial court's resolution of disputed fact issues for legal and factual sufficiency under the same standards of review that we apply in reviewing a jury's or trial court's findings of fact at trial. *Id.*

## Analysis

The following trial court finding is primarily at issue in this appeal:

> [T]he totality of the evidence demonstrates that Mark, ACT Trading, Armored and the other entities that make or made up the ACT Group of Companies are integrated to achieve a common business purpose and are so indistinct from one another that the entities, including Mark, are fused into one entity and cannot be found to be separate and distinct from one another for jurisdictional purposes. The Court further finds that the corporate fiction should be disregarded to prevent fraud or injustice.

**Applicable Law**

Under Texas law, a corporation is presumed to be a separate entity from its officers and shareholders. *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997); *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 738–39 (Tex. App.—Houston [14th Dist.] 2013, pet.

3

denied) (en banc). As a result, a plaintiff who relies on the existence of an alter-ego relationship to ascribe one defendant's contacts with Texas to a distinct foreign corporation must prove that such a relationship exists. *Washington DC Party Shuttle*, 406 S.W.3d at 738–39; *Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 482 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

When the primary party is an individual owner or shareholder, "[t]he corporate fiction is disregarded . . . when a corporation is organized and operated as a mere tool or business conduit" of that individual. *Schlueter v. Carey*, 112 S.W.3d 164, 169 (Tex. App.—Fort Worth 2003, pet. denied) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)). In other words, "[a]lter ego applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased and holding only the corporation liable would result in an injustice." *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 747 (Tex. App.—Dallas 2009, no pet.) (quoting *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990)).

Triple Canopy argued that ACT, along with Mark's other companies, should be considered a single entity for jurisdictional purposes. The doctrine of jurisdictional veil piercing is similar to the alter ego concept in substantive liability, though jurisdictional veil piercing sometimes "involve[s] different elements of proof." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007). To show jurisdictional veil piercing, a plaintiff must show that the primary party "exerts such domination and control over" the defendant "that they do not in

4

reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *Id.* at 173. A factor that courts have considered for jurisdictional veil piercing purposes—and that primarily relied upon by Triple Canopy—is whether the parties have observed corporate formalities. *Id.* at 175; *see, e.g.*, *Crithfield v. Boothe*, 343 S.W.3d 274, 284–85 (Tex. App.—Dallas 2011, no pet.); *Cappuccitti*, 222 S.W.3d at 481–82.

**Jurisdictional Facts**

Mark organized ACT in a UAE free zone for convenience and personal tax advantages. He charged all of his expenses when travelling to ACT's credit card for convenience. Additionally, he and his wife had made significant personal purchases on the card—for food, medical and dental expenses, and marina fees—although Mark said that they had paid the company back for those purchases.

Mark testified that ACT advertises on an internationally available website along with the other ACT group of companies.[3] The website was set up so that persons in different geographical areas were directed to different telephone numbers based on their geographical area.[4] However, Mark also testified that the number for ACT is now his personal cell phone number, and that he does all of his business via that number no matter where he is personally located so that

---

[3]According to Mark, one company—Armored Cars and Trucks LLC—had been "dormant" for three years.

[4]ACT pays for the website.

5

he is immediately available to his clients. Mark said that he sometimes pays the phone bill from a personal account, and other times he pays it from ACT's account. Mark also used ACT's credit card "a couple of times" to buy truck parts in Texas for ACT because he could not buy them in the UAE; he shipped the parts to ACT in either the UAE or Dubai.

**Application**

We conclude and hold that the trial court did not err by finding that its general jurisdiction over Mark should be imputed to ACT. *See Cappucitti*, 222 S.W.3d at 484; *cf. Gonzalez v. Lehtinen*, No. 13-06-441-CV, 2008 WL 668600, at *5 (Tex. App.—Corpus Christi Mar. 13, 2008, pet. denied) (mem. op.) ("The court also heard Lehtinen testify that Cárdenas was so closely involved with Hidalgo Truck that he used its mailing address as his own and could almost always be reached by telephone when calling Hidalgo Truck's phone number."). The evidence shows that Mark operated all three companies for similar purposes and marketed them jointly, controlling them from wherever he happened to be located. It also shows that Mark and his wife treated ACT's credit as their own for their personal benefit. That they may have eventually paid back ACT for their purposes does not change the fact that they used the credit card for significant personal expenses. Much of ACT's argument pertains to the alleged lack of contacts between ACT and Texas; however, our analysis, in keeping with the trial court's findings, is focused on the reverse veil piercing theory argued by Triple Canopy in the trial court. We overrule ACT's first issue.

**Traditional Notions of Fair Play and Justice**

In its second issue, ACT argues that exercising jurisdiction over it would be unfair because Mark is the only defendant with any Texas contacts. *See Waterman S.S. Corp. v. Ruiz*, 355 S.W.3d 387, 426 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (op. on reh'g) ("Generally, Texas has no interest in adjudicating a case between nonresidents concerning occurrences that took place outside of Texas.").

Even when the contacts of the parent are imputed to the subsidiary based on the theory of alter ego, the trial court's exercise of general, personal jurisdiction over the subsidiary must comport with traditional notions of fair play and substantial justice. *Cappuccitti*, 222 S.W.3d at 484, 486–87. Here, Mark alleged no facts that would support a finding of unfairness: Mark testified that ACT's UAE office had been closed since October 2013, and he did not testify about the location of witnesses or files related to the litigation. In light of his testimony that he is present in Granbury at least one third of every year and that his business dealings are structured so that he can direct them at any time of day from anywhere in the world—and in light of the lack of testimony that ACT would be burdened by defending the suit in Texas—we conclude and hold that the trial court did not err by determining that exercising jurisdiction over ACT would not offend traditional notions of fair play and substantial justice. *See, e.g.*, *Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores*, 270 S.W.3d 741, 755–56

(Tex. App.—Dallas 2008, pet. denied); *Cappucitti*, 222 S.W.3d at 486. We overrule ACT's second issue.

## Conclusion

Having overruled ACT's two issues, we affirm the trial court's order denying ACT's special appearance.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DELIVERED: January 22, 2015